| | |
|---|---|
| **KIZER WRIGHT, Substitute Party** ) | |
| **For, TAMMY MICHELLE WRIGHT**[1] ) | |
| ) | |
| **Plaintiff,** ) | |
| v. ) | Civil Action No. 7:14-CV-100 |
| ) | |
| **CAROLYN W. COLVIN, Acting** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## **MEMORANDUM OPINION**

Plaintiff Tammy Michelle Wright ("Wright") challenges the final decision of the Commissioner of Social Security ("Commissioner") determining that she was not disabled and therefore not eligible for supplemental security income ("SSI") and disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433, 1381–1383f. Specifically, Wright alleges that the ALJ erred by failing to properly weigh her treating social worker's opinions and by failing to properly evaluate her credibility. Additionally, Wright argues that her case should be remanded to the Commissioner to consider new evidence. I conclude that substantial evidence supports the Commissioner's decision on all grounds. Accordingly, I **DENY** Wright's Motion for Summary Judgment (Dkt. No. 11), and **GRANT** the Commissioner's Motion for Summary Judgment. Dkt. No. 19.

---

[1] Ms. Wright passed away on August 19, 2013. R. 9. The substituted party is her husband, Kizer Wright.

1

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Wright failed to demonstrate she was disabled under the Act.[2] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Wright filed for SSI and DIB on May 19, 2010, claiming that her disability began on December 11, 2008. R. 225. The Commissioner denied the application at the initial and reconsideration levels of administrative review. R. 137–41, 147–53. On October 2, 2012, Administrative Law Judge ("ALJ") Jeffrey Schueler held a hearing to consider Wright's disability claim. R. 41–88. Wright was represented by an attorney at the hearing, which included testimony from Wright and vocational expert Mark Heilman. Id.

---

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

On October 22, 2012, the ALJ entered his decision analyzing Wright's claim under the familiar five-step process,[3] and denying Wright's claim for disability. R. 23–35. The ALJ found that Wright suffered from fibromyalgia, degenerative disc disease of the cervical spine, irritable bowel syndrome ("IBS"), hypertension, anemia, a history of urinary tract infections, major depressive disorder, and generalized anxiety disorder. R. 32–33. The ALJ found that Wright retained the residual functional capacity ("RFC") to perform simple, routine, repetitive tasks in a low-stress job where she should be able to lift and carry 10 pounds and sit for 6 hours of an 8-hour work day. Id. The ALJ further found that Wright can walk or stand for 2 hours in an 8-hour period, cannot climb ladders, ropes or scaffolds; cannot perform more than occasional balancing, stooping, kneeling, crouching, crawling, or climbing of ramps or stairs; and cannot be exposed to heights and hazardous machinery. R. 33. The ALJ determined that Wright could not return to her past work as a cashier, sewing machine operator, or cleaner (R. 30, 33), but that she could work at jobs that exist in significant numbers in the national economy, such as ticket checker, addresser, or printed circuit board assembly screener. R. 34. Thus, the ALJ concluded Wright was not disabled. Id.

On February 10, 2014, the Appeals Council denied Wright's request for further review (R. 1–3) and this appeal followed.

---

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## ANALYSIS

Opinion of Licensed Clinical Social Worker

Wright argues that the ALJ did not adequately consider the opinion of her treating social worker, Catherine Burcham, LCSW, that Wright was "unable to meet competitive standards" in the workplace. R. 601. The ALJ considered Ms. Burcham's assessments and gave them "little weight to the extent they are more restrictive than those found by Dr. Berry and the reviewing psychologists." R. 33. Specifically, the ALJ noted that Ms. Burcham was not an "acceptable medical source" under the Social Security Regulations, and that her medical assessments were not supported by her own clinical findings or those of Dr. Berry. Id.

Wright was born in 1967 and suffers from multiple physical and mental impairments, including fibromyalgia, IBS, hypertension, and recurrent urinary tract infections dating to 2001. R. 30. Additionally, Wright reported depression and anxiety. Id. Wright most recently worked as a cleaner for Clayton Homes; she also previously worked as a cashier and a sewing machine operator. R. 46–47. Wright reported she was laid off from her job as a cleaner and could not find another job because she was in too much pain to find similar cleaning work. R. 54.

Wright's medical records show consistent complaints of depression and anxiety, fibromyalgia, and IBS. See, e.g., R. 454, 508, 517. Her care providers' diagnoses are consistent with these complaints.

Wright began seeing Jennifer Bennett, a nurse practitioner, at Tri Area Health Clinic in late 2008 complaining of increased dysuria and lower back pain. R. 415. However, her pain score at this visit was noted as "0/10." Wright also reported IBS and

4

fibromyalgia as chronic problems and noted that she smoked one pack of cigarettes per day. R. 415. On January 31, 2009, Wright followed up at the clinic for her depression and myalgia and for blood sugar fluctuations. R. 419. Her pain score was again a "0." R. 420. Over the next several months, Wright visited the clinic for medication refills (R. 422) and follow up care (R. 424) but reported no major changes in her health. On December 14, 2009, Wright visited Ms. Bennett for a medication refill and told Ms. Bennett that, because she was having difficulty concentrating, she had restarted an old prescription for Dexadrine. R. 431. Ms. Bennett reminded Wright that doing so was a violation of her controlled substance agreement, but felt Wright "did not take [her] seriously." R. 432.

On April 21, 2010, Wright was admitted to Twin County Hospital after she attempted suicide by overdosing on prescription medications while drinking alcohol. R. 347. Wright's urine screen was positive for opiates and methadone. Id. Wright admitted to taking multiple medications, some of which were not prescribed to her, and drinking alcohol prior to being admitted to the hospital. Id. When she was discharged, Wright reported she did not have any suicidal thoughts. R. 350. Wright was referred to Mt. Rogers for follow up mental health treatment. R. 348.

On September 24, 2010, Angelia Berry, Ph.D., a licensed clinical psychologist, gave Wright a psychological evaluation. R. 453–57. Dr. Berry noted that Wright had attended three counseling sessions since being discharged from the hospital following her suicide attempt in April. R. 455. Wright also admitted to nightly alcohol use. R. 454. However, Wright performed adequately on the mental status exam. R. 456. She reported symptoms consistent with mild depression and generalized anxiety disorder. Id. Dr. Berry concluded that Wright was "capable of understanding direction, including simple and

more detailed and complex directions." R. 457. Dr. Berry also noted that Wright's "ability to respond appropriately to job demands" and her "ability to cope effectively with daily stressors may be mildly impaired" but that her prognosis was "fair to good." Id.

Wright's claims were evaluated by two state agency psychologists who gave mental RFC opinions. R. 97, 115. On November 22, 2010, Julie Jennings, Ph.D., concluded that Wright could work in "simple, unskilled, non stressful work." R. 98. Dr. Jennings rated Wright's ability to carry out short and simple instructions, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, sustain an ordinary routine without special supervision, work in coordination with or in proximity to others without being distracted, and to make simple work-related decisions as "[n]ot significantly limited." Id. Wright's ability to carry out detailed instructions and to maintain attention and concentration for extended periods were rated as "[m]oderately limited." Id.

On July 16, 2011, Jo McClain, PC, came to similar conclusions. McClain found that Wright's ability to carry out very short and simple instructions was "[n]ot significantly limited" as were her abilities to sustain an ordinary routine without special supervision, her ability to work in coordination with or in proximity to others without being distracted, and her ability to make simple work-related decisions. R. 114. Wright's ability to carry out detailed instructions, to maintain attention and concentration for extended periods, to perform activities within a schedule, and her ability to complete a normal workday and workweek without interruptions from psychologically based

6

symptoms and to perform at a consistent pace without unreasonable rest periods were rated as "moderately limited." Id.

On November 16, 2010, Donald Williams, M.D., gave an opinion regarding Wright's physical RFC. R. 95–97. Dr. Williams concluded that Wright did have exertional limitations, but that she could occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk for a total of 4 hours; sit for 6 hours of an 8-hour work day; that she was limited in her lower extremities; and that she had right sided weakness of her right arm and leg. R. 96. Dr. Williams concluded that Wright could occasionally climb ramps and stairs; could never climb ladders or scaffolds; and could occasionally stoop, kneel, crouch, and crawl. Id. Dr. Williams also concluded that Wright should avoid concentrated exposure to hazards like machinery and heights. R. 97. In sum, Dr. Williams wrote that Wright's condition "results in some limitations in [her] ability to perform work related activities but does not prevent [her] from working." R. 100.

On July 12, 2011, Richard Surrusco, M.D., also evaluated Wright's physical RFC. R. 111–13. Dr. Surrusco also found Wright to have exertional limitations, but concluded that she could frequently lift and/or carry 10 pounds; stand and/or walk 6 hours of an 8-hour workday; occasionally climb ramps or stairs; could never climb ladders or scaffolds; and could occasionally balance, stoop, kneel, crouch, and crawl. R. 112. Dr. Surrusco also advised that Wright should avoid concentrated exposure to hazards like machinery and heights. R. 113.

On October 24, 2011, Wright presented to Peace of Mind Counseling Services. R. 698. Ms. Burcham, LCSW, evaluated Wright and determined she had severe

7

depression, chronic medical issues, poor relationships, no social or home support, and a GAF score of 50. R. 704. On November 19, 2011, Ms. Burcham completed a Mental Residual Functional Capacity Questionnaire. R. 599–603. In this report, Ms. Burcham concluded that Wright was primarily "unable to meet competitive standards" in an evaluation of Wright's ability to do work-related activities on a daily basis. R. 601. Ms. Burcham further concluded that Wright was "unable to meet competitive standards" in the categories of understanding and remembering detailed instructions; carrying out detailed instructions; setting realistic goals; and dealing with the stress of semiskilled and skilled work. R. 602. Wright's ability to interact appropriately with the general public, to maintain socially appropriate behavior, and adhere to basic standards of neatness and cleanliness were "seriously limited, but not precluded" while she would not be able to meet competitive standards with her present ability to travel in an unfamiliar place. Id. Ms. Burcham concluded that Wright would likely miss 4 days of work per month, and that her impairment had lasted or would be expected to last for a period longer than 12 months. R. 603.

On February 16, 2012, Wright saw Heather Richardson, a nurse practitioner at Galax Family Care. R 689–91. At this visit, Wright complained about problems with her IBS and pain and numbness in different places on her body. R. 687. At a follow-up visit on April 16, 2012, Wright was again seen by Ms. Richardson for her IBS and pain. R. 687–88. Wright was prescribed medication. R. 688.

After the hearing before the ALJ, Wright was evaluated by Robert C. Miller, Ed.D, L.C.P. R.764–73. On January 21, 2013, Dr. Miller evaluated Wright and diagnosed her with major depressive disorder, borderline intellectual functioning with an IQ in the

8

Case 7:14-cv-00100-RSB   Document 21   Filed 09/29/15   Page 8 of 17   Pageid#: 907

71–84 range, and a GAF score of 55. R. 768. Dr. Miller concluded that Wright was "unable to meet competitive standards" in 15 out of 25 work-related activities in a regular work setting. R. 771–72. Wright was "seriously limited, but not precluded" in the remaining activities. Id. Dr. Miller noted that Wright's MMPI-2 profile "indicates a plea for help and/or exaggeration" but that her profile was consistent with patients who have chronic pain. R. 767. The Appeals Council considered Dr. Miller's report and denied Wright's request for a review; therefore, the ALJ's decision is the final decision of the Commissioner. R. 1, 5.

Wright argues that the ALJ failed to give appropriate weight to Ms. Burcham's opinions regarding Wright's severe workplace limitations. However, as a licensed clinical social worker, Ms. Burcham is not an acceptable medical source. 20 CFR § 404.1527(c); 20 CFR § 416.927(c) (defining acceptable medical sources as licensed physicians, licensed or certified psychologists, and – for limited purposes – licensed optometrists, licensed podiatrists, and qualified speech-language pathologists). Even so, an ALJ has a "duty to consider all of the evidence available in a claimant's case record, includ[ing] such evidence provided from 'other' nonmedical sources" such as a social worker. Ingle v. Astrue, 1:10CV141, 2011 (WL 5328036, at *3 (W.D.N.C. Nov. 7, 2011)(citing Social Security Ruling ("SSR") 06-03p; 20 CFR §§ 404.1513(d), 416.913(d)). To determine the weight given to the opinion of a source who is not "acceptable medical source" as defined by the Act, the ALJ must consider: (1) the length of time the source has known the claimant and the frequency of their contact; (2) the consistency of the source's opinion with the other evidence; (3) the degree to which the source provides supportive evidence; (4) how well the source explains his or her opinion; (5) whether the source has

9

an area of specialty or expertise related to the claimant's impairments; and (6) any other factors tending to support or refute the opinion. Beck v. Astrue, 3:11-CV-00711, 2012 WL 3926018, at *12 (S.D.W. Va. Sept. 7, 2012) (citing SSR 06–03p.). The ALJ considered Mr. Burcham's opinion and wrote "Ms. [Burcham] is not an acceptable medical source as that term is defined in the Regulations and her medical assessments are not supported by her own clinical findings or those recorded by Dr. Berry." R. 33. Therefore, the ALJ "accorded little weight" to Ms. Burcham's opinions "to the extent that they are more restrictive than those found by Dr. Berry and the reviewing psychologists." Id.

There is substantial evidence to support the ALJ's decision not to adopt Ms. Burcham's opinions. First, her opinions are inconsistent with the treatment notes made by Galax Family Care during Wright's visits there in early 2012, just a few months after Ms. Burcham's report. At these visits, Wright reported no significant psychological impairments but went to the clinic complaining of an IBS flare up and two episodes of sweating, pain, and numbness at night. R. 687. It is notable that during these visits in early 2012, just a few months after Ms. Burcham's evaluation, Wright's allegedly severe mental symptoms were not addressed. Galax Family Care did note that Wright appeared fatigued and had a depressed mood (R. 687); however, there was no treatment or further mention of her mental health issues.

Second, Ms. Burcham's opinions conflict with Dr. Berry's September 2010 evaluation of Wright only one year prior to Ms. Burcham's evaluation. In her report, Dr. Berry noted that Wright was able to drive and that she cared for her son, ran errands, socialized, and was able to cook and clean. R. 455–56. Dr. Berry also noted that Wright

10

felt depressed "at times" or "sometimes" but that Wright's prognosis was "fair to good, with better outcomes expected with participation in mental health and substance abuse treatment." R. 456–57.

Third, Ms. Burcham's opinions conflict with the psychological reviews completed Drs. Williams and Jennings, who found that Wright's abilities to work were either "[n]ot significantly limited" or only "[m]oderately limited" and that Wright could perform simple, unskilled work in a lower stress environment. R. 98; R. 114.

Finally, Ms. Burcham's conclusions and recommended restrictions are not supported by her own records. The questionnaire form that contains Ms. Burcham's opinions provides little to no factual basis to support her conclusions. The form lists Ms. Burcham's clinical findings as "[d]epressed mood; diminished interest in activities; isolation; psychomotor retardation; lack of energy; low self-esteem; impaired concentration; [and] anxiety." R. 599. However, the report states no connection between the diagnoses and the conclusions about Wright's abilities in the workplace. There is no explanation as to the severity of the symptoms and their impact on each of the evaluated categories. Ms. Burcham's opinion simply notes that Wright's symptoms "affect" her abilities without offering any specific reasons as to how or why the symptoms have the impact Ms. Burcham concludes they do. Without more explanation, such a conclusory report simply cannot be given more weight than the opinions of the other medical sources in this case.

The issue before me is whether there is substantial evidence to support the ALJ's decision to give Ms. Burcham's opinion little weight. I find that the ALJ's decision is supported by substantial evidence because Ms. Burcham's opinions were inconsistent

with the opinions of the medical sources who evaluated Wright and reviewed her case both before and after Ms. Burcham gave her report. Ms. Burcham's report also lacks sufficient evidence to support the conclusions it adopts. Therefore, the ALJ did not err.

Credibility

Wright claims the ALJ did not properly consider her subjective allegations of pain, which Wright argues were "clearly supported by the substantial evidence of record." Pl. Br. Summ. J. p. 18. Further, Wright argues, the ALJ failed to give specific reasons for the weight given to the allegations and the bases for that weight. Id.

After a complete review of Wright's treatment records and allegations of disability, the ALJ stated:

> [t]he undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity assessment.

R. 32.[4] The ALJ thoroughly outlined his reasons for making this determination. The ALJ wrote that while Wright had been diagnosed with fibromyalgia and degenerative disc disease, she gave no evidence that she ever saw a rheumatologist or that she "required ongoing treatment" by any type of specialist. Id. Similarly, Wright's IBS, hypertension, anemia, and history of UTIs have no corresponding proof that these issues "cause functional limitations in excess of those found by" the ALJ. Id. The ALJ agreed that fibromyalgia likely caused Wright pain and fatigue; however, Wright's statements about

---

[4] The court notes that the ALJ used this boilerplate language in his analysis, and that recently, in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), the Fourth Circuit held that this boilerplate "gets things backwards" and conflicts with the agency's own regulations, which require the ALJ to determine the extent to which a claimant's alleged functional limitations are consistent with the medical findings and other evidence. Id. at 639. The Fourth Circuit found, however, that any error associated with use of this boilerplate is harmless if the ALJ "properly analyzed credibility elsewhere." Id. In this case, the ALJ properly analyzed Wright's credibility in spite of this boilerplate language. See Shelton v. Colvin, No. 7:13CV00470, 2015 WL 1276903, at *6 (W.D. Va. Mar. 20, 2015).

12

Case 7:14-cv-00100-RSB   Document 21   Filed 09/29/15   Page 12 of 17   Pageid#: 911

the impact of these symptoms must be considered in connection with her abuse of pain medications and her alcohol consumption. Id. At the hearing, Wright testified that she could occasionally do the laundry at her home (R. 69) and had been doing the grocery shopping until approximately one year before the hearing (R. 75). The ALJ also noted that all of these activities "indicate that [Wright] is not as limited as she claims." Id. Clearly, the ALJ did list specific reasons for coming to the conclusions he did regarding Wright's credibility.

Though the ALJ may have erred by using Wright's RFC as a baseline for comparison with her subjective complaints rather than formulating the RFC to include consideration of her subjective pain allegations, any error in this case is harmless. This is true because there is ample other evidence to support the conclusion Wright was not credible in her reports of pain and the effect it had on her. For the same reasons noted by the ALJ and outlined above, there is still substantial evidence to conclude Wright's pain was not as severe or limiting as she claimed. Here, the ALJ did "determine the extent to which [Wright's] alleged functional limitations . . . can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how [her] symptoms affect [her] ability to work" as required by 20 C.F.R. § 416.929(a). Wright's alleged limitations were clearly inconsistent with the other medical findings in her case.

Additionally, it is for the ALJ to determine the facts of a particular case and to resolve inconsistencies between a claimant's alleged impairments and her ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Wright's subjective allegations of her disabling pain, symptoms, and impairments are not conclusive on their own. The ALJ

13

examines all of the evidence, including a claimant's subjective allegations and the objective medical record, and determines whether a claimant has met the burden of proving she suffers from an impairment which is reasonably expected to produce the claimed symptoms. See Craig v. Chater, 76 F.3d 585, 592–93 (4th Cir. 1996). The ALJ then must evaluate the intensity and persistence of the claimed symptoms and their effect upon a claimant's ability to work. Id. at 594–95.

In this case, the ALJ recognized and accounted for Wright's impairments that caused her limitations. The ALJ found that Wright's statements regarding the severity of her limitations and pain were not wholly creditable because they were not supported by the objective medical evidence, her treatment history, and her daily activities. R. 32. The ALJ's opinion includes a detailed consideration of Wright's medical history along with Wright's own allegations. See R. 30–33.

A reviewing court gives great weight to the ALJ's assessment of a claimant's credibility and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight). "The ALJ… is not required to accept a claimant's testimony about her symptoms at face value; rather he is to weigh such testimony along with all of the evidence, including not only the objective medical evidence, but statements and other information provided by physicians or psychologists and other persons about her symptoms and how they affect her and any other relevant evidence in the case record." Meadows v. Astrue, No. 5:11CV00063, 2012 WL

14

3542536, at *9 (W.D. Va. Aug. 15, 2012) (citing SSR 86-7p). Further, a reviewing court will defer to the ALJ's credibility finding except in those "exceptional" cases where the determination is unclear, unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all. See Bishop v. Comm'r of Soc. Sec., 583 F. App'x 65, 68 (citing Edelco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997)).

After a review of the entire record, I find that substantial evidence exists to support the ALJ's determination that Wright's testimony is only partially credible, and that Wright is capable of performing work at the level stated in the ALJ's opinion. The medical record in this case certainly supports the conclusion that Wright suffered from multiple ailments. However, the record lacks the sort of limitations (including both Wright's reported limitations and doctor-recommended limitations) that would support a conclusion that she is disabled.

New Evidence

Wright also requests that the court remand her claim on the basis of the new evidence submitted to the Appeals Council. Pl.'s Br. Summ. J. 13, ECF No. 11. Wright submitted Dr. Miller's report from his January 21, 2013, evaluation to the Appeals Council after her hearing before the ALJ. R. 1, 5. Dr. Miller's report, as outlined above, reiterated Wright's complaints and reported his diagnoses and opinions on Wright's mental functioning. R. 764–73.

The Appeals Council considered this additional report and found that it did not provide a reason to review the ALJ's decision. R. 1. When deciding whether to grant review, the Appeals Council must consider additional evidence, "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the

15

ALJ's decision." Wilkins v. Sec'y., Dep't. of Health and Human Servs., 953 F.2d 93, 95–96 (4th Cir. 1991). Evidence is new if it is not duplicative or cumulative. Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome. Id. When the Appeals Council denied Wright's request for review, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981. As such, this Court must "review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the [Commissioner's] findings. Wilkins, 953 F.2d at 96. "However, the Fourth Circuit has also admonished that it is the role of the ALJ, and not reviewing courts, to resolve conflicts in the evidence." Davis v. Barnhart, 392 F.Supp.2d 747, 751 (W.D. Va. 2005) (citing Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996)). Thus, when faced with new evidence, a court must reconcile its duty under Wilkins to review the entire record including the new evidence to determine if there is a reasonable possibility that it would change the outcome, with its obligation under Smith to abstain from making credibility determinations and resolving factual conflicts. Davis, 392 F.Supp.2d at 751.

      Here, while the additional report from Dr. Miller is "new" because it is not duplicative or cumulative, it is not "material" because there is no reasonable probability that the report would have changed the outcome of the hearing. Dr. Miller's evaluation was performed in January of 2013, several months after the October 2012 hearing before the ALJ. Dr. Miller's report does not comment on Wright's condition prior to the hearing. Instead, it evaluates Wright's state at the time of her visit with Dr. Miller. Therefore, this report could not possibly have changed the outcome of the ALJ's decision from several months prior.

While Dr. Miller's report indicates Wright's condition may have worsened after the hearing, Wright's proper recourse in such a situation is to file a new application for benefits. Therefore, I find no reasonable probability that the new evidence would have changed the ALJ's decision in this case, and there is no reason to remand this case based on Dr. Miller's report.

## **CONCLUSION**

The issue for this court to determine is whether the ALJ's decision is supported by substantial evidence. This standard – defined as more than a mere scintilla but less than a preponderance – has been met in this case. Therefore, I cannot reverse the ALJ's decision. See Craig, 76 F.3d at 589.

It is not the province of the court to make a disability determination. The court's role is limited to determining whether the Commissioner's decision is supported by substantial evidence, and in this case, substantial evidence supports the ALJ's opinion. The ALJ properly considered all of the objective and subjective evidence in adjudicating Wright's claim for benefits and in determining that her physical and mental impairments would not significantly limit her ability to do basic work activities. Accordingly, I **AFFIRM** the Commissioner's decision, Wright's motion for summary judgment is **DENIED**, and the Commissioner's motion for summary judgment is **GRANTED**.

Enter: September 29, 2015

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge